# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARLENE L. WATSON,<br><br>Plaintiff<br><br>v.<br><br>ANDREW SAUL,* Acting Commissioner of Social Security,<br><br>Defendant | Case No. 2:18-cv-01019-BNW<br><br>**ORDER** |

This matter was referred to the undersigned magistrate judge on consent under 28 U.S.C. § 636(c). (ECF Nos. 22, 26). The case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Marlene L. Watson's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court reviewed Plaintiff's motion for reversal or remand (ECF No. 19), filed January 22, 2019, and the Commissioner's response and cross-motion to affirm (ECF Nos. 24, 25), filed March 22, 2019. Plaintiff did not file a reply.

**I.     BACKGROUND**

**1.     Procedural History**

On December 15, 2014, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, respectively, alleging an onset date of June 10, 2014. AR[1] 249-258. Plaintiff's claim was denied initially and on reconsideration. AR 112-121, 132; 173-176. A hearing was held before an Administrative Law

---

* Andrew Saul has been substituted for his predecessor in office, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 15)).

Judge ("ALJ") on December 22, 2016. AR 48-97. On May 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. AR 22-33. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review. AR 1-6. Plaintiff, on June 5, 2018, commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* Compl. (ECF No. 1)).

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual must also provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires that the ALJ determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, 20 C.F.R. § 404.1509, then a finding of disabled is made. *Id*. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding that the ALJ erred in disregarding SSR 82-41).

The SSA must follow a special technique to evaluate mental impairments at steps two and three. *Id*. § 404.1520a. The special technique requires that the ALJ substantiate the presence of a medically determinable impairment using pertinent symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe, and the analysis proceeds. *Id.* § 404.1520a(d)(1).

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See id.* § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past

work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. *Id.* § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 24-33.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of June 10, 2014. AR 24.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: chronic back pain, secondary to degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee with meniscus tear; carpal tunnel syndrome; history of transient ischemic attack with vertigo and chronic headaches; acute gastritis and gastroesophageal reflux disease; hypertension; diverticulitis; depression; and anxiety with panic attacks. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

At steps two and three, the ALJ applied the requisite special technique to evaluate Plaintiff's mental impairments and found that these impairments cause mild limitation in understanding, remembering, or applying information; in interacting with others; and in adapting or managing oneself. AR 26. The ALJ also found that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace. *Id*.

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work with the following exceptions: Plaintiff can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; she is limited to frequent, but not constant fingering and handling; and she is limited to detailed, but not complex task jobs. AR 27. The ALJ also found that Plaintiff was unable to perform any PRW. AR 31.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 32-33. Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from June 10, 2014, through May 18, 2017, the date of the ALJ's decision. AR 33.

### 3. Analysis
#### a. Whether the ALJ erred by discounting the opinion of treating physician Dr. Maurice Alazar, M.D. when determining Plaintiff's RFC

##### i. The parties' arguments

Plaintiff moves to remand this matter on grounds that substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding. Plaintiff argues this is so because the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of treating physician Dr. Maurice Alazar, and therefore, created a RFC without any medical opinion.[3] Additionally, Plaintiff argues that the ALJ erred by substituting his own judgement for that of a medical doctor when determining the RFC.

The Commissioner disagrees. He argues that the ALJ properly relied on Plaintiff's treatment history, her subjective complaints, and objective findings to determine her RFC. He also adds that it is the ALJ—not a medical doctor—who determines a plaintiff's RFC. Finally, the Commissioner argues that the ALJ is neither required to accept all portions of a treating doctor's opinion nor he is required to discuss every piece of evidence in the record.

//

---

[3] Plaintiff's claim that the ALJ created a RFC without any medical opinion is inaccurate. This is because the ALJ relied on a consultative examiner's opinion in determining the RFC. AR 29-30. In light of this misrepresentation, the court will not further address this subpart of the issue.

### ii. The ALJ's decision

The ALJ found that Plaintiff can perform sedentary work with a few exceptions: Plaintiff can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds; she is limited to frequent, but not constant fingering and handling; and she is limited to detailed, but not complex task jobs. AR 27. In determining her RFC, the ALJ relied on objective medical evidence (e.g., nerve conduction test, MRI studies, etc.), medical source opinions, Plaintiff's treatment history, and Plaintiff's pain and symptom testimony. AR 28-31. In his evaluation of the medical source opinions, the ALJ gave great weight to the state's mental health consultative examiner, little weight to state agency medical consultants, some weight to Dr. Alazar's opinion that Plaintiff has sedentary limitations and that she would have four work absences a month, and little weight to Dr. Alazar's opinion that Plaintiff is unable to work. AR 30.

### iii. How an ALJ may weigh opinion evidence

The ALJ's role is to consider the evidence, state an interpretation thereof, and make findings accordingly. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is not required to discuss every piece of evidence in the record. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). And an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

But when faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician's opinion. *Belanger v. Berryhill*, 685 F. App'x 596, 598 (9th Cir. 2017) (citing *Reddick*, 157 F.3d at 725). Similarly, if an ALJ gives a treating physician's opinion "little weight," the ALJ also must

provide specific and legitimate reasons for doing so. *Burns v. Berryhill*, 731 F. App'x 609, 612 (9th Cir. 2018). The ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.3d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Put another way, when discounting Dr. Salazar's opinion, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why…[the other doctors' opinions]…, rather than…[Dr. Salazar's]…, are correct." *Reddick*, 157 F.3d at 725. This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision.

### iv. Whether the ALJ erred in weighing Dr. Alazar's opinion evidence

Dr. Maurice Alazar, M.D. was Plaintiff's treating physician from August 2015 through, at least, October 2016. *See, e.g.,* AR 469-480, 532-556; 583-585; 601-605. On September 8, 2015, Dr. Alazar filled out a Physical Assessment questionnaire. AR 452-453. The questionnaire provided a series of check boxes allowing the doctor to indicate the severity of Plaintiff's conditions. *Id*. Dr. Alazar checked boxes expressing the following opinions: (1) Plaintiff needs to have at least thirty-minute breaks every two-to-three hours, (2) Plaintiff can walk fewer than two city blocks, (3) Plaintiff can sit up to four hours in an eight-hour workday, (4) Plaintiff can stand up to one hour in an eight-hour workday, (5) Plaintiff can occasionally lift ten pounds or fewer, (6) Plaintiff can never lift more than twenty pounds, and (7) Plaintiff would miss at least four days of work each month. AR 452-453. Dr. Alazar also opined that Plaintiff could not work. AR 598.

The ALJ gave two reasons for discounting Dr. Alazar's opinion regarding Plaintiff's inability to work: (1) It was an issue reserved for the Commissioner, and (2) it was not supported by any evidence. AR 30.

First, the ALJ may not reject a treating physician's opinion simply because it touches on an issue that is reserved for the Commissioner. *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th

Cir. 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202-1203 (9th Cir. 2001)). Although the ALJ explained that he gave little weight to Dr. Alazar's opinion because it touched on an issue reserved for the Commissioner, the ALJ also reasoned that the doctor's opinion lacked any supporting evidence. AR 30. Therefore, to determine whether the ALJ erred in weighing Dr. Alazar's opinion also requires determining whether the ALJ's second reason was specific and legitimate.

Second, because Dr. Alazar's opinion regarding Plaintiff's functional capacity was contradicted by the reports of an examining and non-examining physician, the ALJ could reject the doctor's opinion only by providing specific and legitimate reasons. *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). The ALJ found that "there is no evidence to support" Dr. Alazar's opinion that Plaintiff is unable to work. But this conclusion lacks the sufficient specificity required. Even though the ALJ included a string of general citations to the record,[4] he failed to explain in detail what the conflicting evidence was and his interpretation of this conflicting evidence. *Thomas*, 278 F.3d at 957 (citing *Magallanes*, 881 F.3d at 751). This failure to explain is significant because it prevents the court from having a point of reference to determine which components of these exhibits conflict with Dr. Alazar's opinion. For example, Exhibit 4F, to which the ALJ cites, has multiple medical records, including a November 13, 2014 visit with Dr. Shoaib Khalil, M.D. diagnosing Plaintiff with neuropathy and a sleep disorder; a right knee MRI performed on December 15, 2014 evidencing some damage, and a December 18, 2014, visit with Dr. Khalil for an acute respiratory infection. Further, some of the evidence to which the ALJ cites appear to actually support Dr. Alazar's findings. For example, Exhibit 1F diagnoses Plaintiff with migraines. AR 400. And Exhibit 8F contains a prescription for medication for her persistent headaches. AR 447. These records could be consistent with Dr. Alazar's opinion that Plaintiff would require at least thirty-minute breaks every two-to-three hours, or even, that she could miss more than four days of work per month.

---

[4] The ALJ writes, "Furthermore, little weight is given to the opinion that [Plaintiff] is unable to work, as there is no evidence to support this finding (Ex. 1F, 2F, 3F, 4F, 5F, 8F, 10F, 11F, 12F, 17F, 18F, 19F, 21F, 22F, 23F, 27F, and 28F)."

AR 453. In all events, the ALJ's citations to the record do not allow the court to determine (without guessing) whether the ALJ's reasons for rejecting Dr. Alazar's opinion were legitimate.

Although the Commissioner is correct in arguing that the ALJ is not required to discuss every piece of evidence in the record or every sentence of a medical source's opinion, the Commissioner glosses over the ALJ's conclusory reason for discounting Dr. Alazar's opinion. Accordingly, because the ALJ in the instant case does not provide specific and legitimate reasons for discounting Dr. Alazar's opinion, the court holds that the ALJ erred. *Nguyen*, 100 F.3d at 1464 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *see also Lewin*, 654 F.2d at 634 (The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based.").

The next step is to determine whether the ALJ's error is harmless. An ALJ's error is harmless only if it is found to be "inconsequential to the ultimate nondisability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination." *Stout*, 454 F.3d at 1055-1056; *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This court cannot say with certainty that another ALJ, upon crediting Dr. Alazar's opinion, would not have reached a different disability determination. Accordingly, this error was not harmless.

**b. Whether substantial evidence supports the ALJ's determination that Plaintiff had the transferability skills to work as a skilled investigator**

**i. The parties' arguments**

Plaintiff next moves to remand this matter on the grounds that substantial evidence does not support the ALJ's finding that Plaintiff possesses the transferrable skills to perform other work in the national economy. This is because the ALJ relied on the vocational expert ("VE") who testified that Plaintiff could perform skilled work because of both her previous jobs and the specialized training she received in 2010. According to Plaintiff, the ALJ could not consider this

specialized training because it fell outside the five-year window permitted by the Programs Operations Manual Systems ("POMS") guidelines.

The Commissioner disagrees. First, he argues that Plaintiff waived this issue because she was represented by counsel at the ALJ hearing and that her counsel failed to question the VE on this issue. The Commissioner next argues that, absent waiver, the ALJ was not required to follow the POMS guidelines because they are not binding.

### ii. The ALJ's decision and the vocational expert's testimony

The ALJ relied on the VE to find that Plaintiff could not perform her past relevant work, but that she could use the management, problem-solving, and customer service skills developed in these prior positions to work as a service investigator and insurance application investigator. AR 32. Both investigator positions are skilled positions. AR 87-88.

The VE testified at the ALJ hearing that Plaintiff's past work experience combined with her 2010 private investigation training would allow Plaintiff to work the sedentary, yet skilled positions of service investigator and insurance application investigator. *Id*.

### iii. Whether substantial evidence supports the ALJ's determination that Plaintiff had the transferability skills to work as a skilled investigator

According to SSR 82-41, "Reduced residual functional capacity (RFC) and advancing age are important factors associated with transferability because reduced RFC limits the number of jobs within an individual's physical or mental capacity to perform, and advancing age decreases the possibility of making a successful vocational adjustment." Because a plaintiff's RFC informs her transferability, and because the court has held that the ALJ erred in determining Plaintiff's RFC, the court will not reach this issue.

## III. CONCLUSION AND ORDER

Accordingly, IT IS THEREFORE ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 19) be GRANTED.

IT IS FURTHER ORDERED that this case is remanded for further proceedings regarding Plaintiff's residual functional capacity ("RCF") finding and, in turn, any effect the RFC finding has on the jobs Plaintiff can perform.

IT IS FURTHER ORDERED that the Commissioner's Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and Remand (ECF Nos. 24, 25) be DENIED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff and against the Commissioner.

DATED: March 13, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE